# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHANE MCKINSEY,** | **CASE NO. 1:15-cv-00796-CCC-GBC** |
|  | **(CHIEF JUDGE CONNER)** |
| **Plaintiff,** |  |
|  | **MAGISTRATE JUDGE COHN** |
| v. |  |
|  | **REPORT AND** |
| **CAROLYN W. COLVIN,** | **RECOMMENDATION TO DENY** |
| **COMMISSIONER OF SOCIAL** | **PLAINTIFF'S APPEAL** |
| **SECURITY,** |  |
|  |  |
| **Defendant.** | **Doc. 1, 9, 10, 11, 12, 13** |

## REPORT AND RECOMMENDATION

### I.   Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Shane McKinsey ("Plaintiff") for supplemental security income ("SSI") and disability insurane benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"), and Social Security Regulations, 20 C.F.R. §§404 *et seq.*, 416 *et seq.* (the "Regulations").[1]  Plaintiff's appeal addresses only mental health symptoms. However, the ALJ properly relied on two medical opinions, lack of mental health treatment, lack of

---

[1] Part 404 governs disability insurance benefit applications and Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

mental health complaints, and lack of mental findings throughout the record to support the RFC regarding mental health symptoms. Doc. 10.

The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Here, the Court would not direct a verdict in Plaintiff's favor. The Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.     Procedural Background

On April 11, 2012, Plaintiff applied for SSI and DIB. (Tr. 181-90). On July 11, 2012, the Bureau of Disability Determination denied these applications, (Tr. 82-107) and Plaintiff requested a hearing. (Tr. 118-20). On October 9, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 36-81). On November 15, 2013, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 15-35). Plaintiff requested review with the Appeals Council (Tr. 14), which the Appeals Council denied on March 7, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.

(Tr. 1-6). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On April 22, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On June 30, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On August 6, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 11). On September 3, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 12). On September 15, 2015, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 13). On September 10, 2015, the case was referred to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.   Standard of Review and Sequential Evaluation Process

To receive DIB or SSI, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *Id*. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *Id*. Before step four, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). *Id*.

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A). Specifically, the Act provides that:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory

diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

## IV.     Relevant Facts in the Record

The relevant period begins in February of 2012. (Tr. 20). Plaintiff did not treat with mental health specialists during the relevant period. Doc. 10. In 2011, treatment records indicated a history of depression, but that Plaintiff "[did] not seem to have problems with [depression] at this point." (Tr. 279). On February 29, 2012 (Tr. 318), March 1, 2012 (Tr. 303), March 16, 2012 (Tr. 373, 376), April 2, 2012 (Tr. 307-08), April 6, 2012 (Tr. 369, 372), May 11, 2012 (Tr. 367-68), May 24, 2012 (Tr. 361-62), May 31, 2012 (Tr. 578), June 26, 2012 (Tr. 619), July 17, 2012 (Tr. 571, 574), August 24, 2014 (Tr. 569), December 21, 2012 (Tr. 614), April 30, 2013 (Tr. 558), May 23, 2013 (Tr. 606), July 7, 2013 (Tr. 538), July 10, 2013 (Tr. 596-97, 599), and August 14, 2013 (Tr. 592, 595), Plaintiff denied psychological symptoms, mental status examination was normal, and assessments indicated only physical diagnoses. The remaining treatment records do not address mental impairments. Doc. 10. On August 14, 2013, treating physician Amara Burney, M.D., observed intact judgment, intact recent and remote memory, appropriate affect, and "[n]o depression, anxiety, agitation, or psychosis" (Tr. 29, 595).

One week earlier, on August 6 and 7, 2013, Plaintiff underwent a Neuropsychological Evaluation with Marlene J. Spark, M.S., a certified school psychologist, and Dr. Sabra Abboud, Psy.D. (Tr. 686-701). Testing indicated "a significant weakness in spelling and written expression." (Tr. 691). They recommended occupational accommodations that "minimize[ed] the need for writing on the job and/or

using computers with spell-check is necessary." (Tr. 699). Spark and Abboud noted that "[o]thers are likely to see [Plaintiff] as toughminded, skeptical, and somewhat hostile.," his "interpersonal style seems best characterized as self-effacing and lacking confidence in social interactions," his "failure to assert himself may result in mistreatment or exploitation by others," "self-esteem is quite fragile and is likely to plummet in response to slights or oversights by other people," "considering Shane's social environment with respect to perceived stressors and the availability of social supports with which to deal with these stressors, his responses indicate that he is likely to be experiencing notable stress and turmoil in a number of major life areas," "his level of social support as being somewhat lower than that of the average adult." (Tr. 695). They included no recommended accommodations or limitations relating to social functioning. (Tr. 699). He reported no history of mental health issues, and that he has never received any mental health treatment (Tr. 688). He exhibited positive attitude, was oriented to time, person, and place, had clear and coherent thought processes and normal speech, but difficulty clearly articulating and finishing his thoughts (Tr. 688). He "demonstrate[d] the ability to be successful in a variety of training programs." (Tr. 699). They indicated Plaintiff "may need to explore areas where he shows less interest, such as in clerical fields working with numbers or a computer." (Tr. 699).

On May 19, 2012, Plaintiff submitted a Function Report in connection with his claim for benefits. He reported that he spends time with others twice a month, could

finish what he starts, follows instructions well, got along "fine" with authority figures, had never been fired or laid off from a job because of problems getting along with other people, and had problems with stress. (Tr. 230). He checked a box that he had problems getting along with others. (Tr. 229). He reported that his weight and physical impairments limited his interaction with family and friends. (Tr. 231). He reported that he was "very stressed with not being able to do what [he] used to do." (Tr. 231). When asked how his "illnesses, injuries, or conditions limit [his] ability to work," he identifies only physical symptoms. (Tr. 224).

On July 15, 2012, Dr. Roger Glover, Ph.D., reviewed Plaintiff's file and opined that he had mild limitations in social functioning. (Tr. 87). Dr. Glover opined that, despite Plaintiff's mild limitations in social functioning, his mental health impairments were non-severe. (Tr. 88).

On October 9, 2013, Plaintiff appeared and testified before the ALJ. (Tr. 38). Plaintiff's counsel attributed Plaintiff's disability to symptoms in his hands and limitations in sitting and standing. (Tr. 41). Plaintiff testified that he had stopped vocational training for carpal tunnel surgery. (Tr. 46). He testified to problems in his hands, neck, back, and knees. (Tr. 46-50, 59). When the ALJ asked if there was "anything else that affects your ability to work," Plaintiff responded only with sciatica. (Tr. 51). Plaintiff testified that he had scheduled mental health treatment after his neuropsychological assessment. (Tr. 63). He explained that his insurance did not cover

mental health but he had found a service that would cover him. (Tr. 63). Plaintiff testified that nortriptyline was "not prescribed for mental health," but had reduced chest pains and panic attacks. (Tr. 64). He testified that depression affected his moods and his relationship with his family. (Tr. 65). A VE also appeared and testified. (Tr. 75). Plaintiff's counsel did not question the VE regarding the impact of social limitations or written expression impairments, although counsel acknowledged that Plaintiff may have a written expression deficit. (Tr. 75-79). The ALJ limited Plaintiff to "unskilled occupations due to his limitations in concentration, persistence, and pace related to depression." (Tr. 24). The ALJ relied on VE testimony to conclude that Plaintiff could perform work in the national economy. (Tr. 30, 75-79).

## V. Plaintiff Allegations of Error

### A. Mental RFC Limitations

Plaintiff asserts that the ALJ should have included limitations relating to social functioning and written expression disorder in the RFC.[2] (Pl. Brief at 4-13). Plaintiff must demonstrate that no reasonable person would have excluded additional limitations. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). As an initial matter, the Court notes that, although Plaintiff was presented by Counsel at the hearing, Counsel failed to question the

---

[2] Plaintiff frames his appeal regarding written expression disorder as a step two severity claim, but to prevail on a step two claim, Plaintiff must demonstrate that there are additional limitations arising from the severe impairment that should have been included in the RFC. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (error at step two is harmless if analysis proceeds past step two unless the error impacts subsequent steps).

VE regarding these impairments. (Tr. 75-79). Plaintiff is essentially arguing that there is new and material evidence that must be developed on remand, specifically VE testimony regarding the availability of jobs given additional limitations in social functioning and written expression. When evidence is not developed before the ALJ, Third Circuit precedent requires that the Court consider whether "good cause" exists for Plaintiff to have failed to present the evidence to the ALJ to prevent claimants from getting a "second bite at the apple." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). Plaintiff provides no reason, much less good reason, for not questioning the VE regarding these alleged limitations. *See Martin v. Colvin*, 4:11-CV-02378, 2014 WL 1235664 (M.D. Pa. Mar. 25, 2014)( "While an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant. The burden still lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition) (quoting *Kenyon v. Colvin,* 2013 U.S. Dist. LEXIS 175897, *13–14, 2013 WL 6628057 (M.D.Pa.2013); *Money v. Barnhart,* 91 Fed. Appx. 210, 215 (3d Cir.2004)) (citing *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. §§ 404.1512(a), 416.912(a)); *cf. Allen v. Colvin*, No. 1:12-CV-1624, 2014 WL 972188, at *2 (M.D. Pa. Mar. 12, 2014) ("we note that counsel on appeal was not the attorney who handled the initial disability hearing before the ALJ. That hearing counsel in our view properly chose not to raise any claims of bias, and thus waived these

claims"); citing *Hummel v. Heckler,* 736 F.2d 91, 94 (3d Cir.1984); *Grant v. Shalala,* 989 F.2d 1332, 1339 (3d Cir.1993). Regardless, Plaintiff fails to demonstrate that no reasonable person would have excluded additional mental health limitations.

### 1.  Social Limitations

Plaintiff cites Dr. Glover's July 15, 2012 opinion that Plaintiff had mild limitations in social functioning. (Pl. Brief at 5) (citing 82-92). However, Dr. Glover opined that, despite Plaintiff's mild limitations in social functioning, his mental health impairments were non-severe. (Tr. 88). A severe impairment "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment is a "slight abnormality" causing "no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154, 107 S. Ct. 2287, 2298, 96 L. Ed. 2d 119 (1987). "[E]ven if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA." SSR 85-28. If an impairment is non-severe, then Plaintiff retains "the ability to perform basic work activities, as required in most jobs. Examples of these are…seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id.* There is a "possibility" that non-severe impairments may combine with other impairments to create more than minimal work

related limitations. *Id.* The ALJ must consider non-severe and severe impairments at subsequent steps. *Id.* However, Plaintiff has not identified any other impairments that would combine with a minimal limitation in social functioning to cause additional restrictions in the RFC. (Pl. Brief). A non-severe impairment, standing alone, does not limit Plaintiff's ability to perform basic work activities. SSR 85-28. Consequently, Dr. Glover's opinion supports the RFC.

Plaintiff cites the August 2013 Neuropsychological Examination, where Dr. Aboud observed "[o]thers are likely to see [Plaintiff] as toughminded, skeptical, and somewhat hostile," his "interpersonal style seems best characterized as self-effacing and lacking confidence in social interactions," his "failure to assert himself may result in mistreatment or exploitation by others," "self-esteem is quite fragile and is likely to plummet in response to slights or oversights by other people," "considering Shane's social environment with respect to perceived stressors and the availability of social supports with which to deal with these stressors, his responses indicate that he is likely to be experiencing notable stress and turmoil in a number of major life areas," "his level of social support as being somewhat lower than that of the average adult." (Pl. Brief at 4-5) (citing Tr. 695). However, Dr. Aboud included no recommended accommodations or limitations relating to social functioning. (Tr. 699). Consequently, both medical opinions support the ALJ's RFC with regard to social limitations.

The only other evidence cited by Plaintiff in relation to social functioning is the checked box in his Function Report that he had difficulty getting along with others. (Pl. Brief at 6) (citing Tr. 229). This check box does not indicate the intensity, frequency, or limiting effect of any alleged difficulty getting along with others. (Tr. 229). Plaintiff could have been indicating only a minimal problem getting along with others. (Tr. 229). Moreover, as Defendant notes:

> Plaintiff alleged disability due to physical impairments (Tr. 206), and related that only physical impairments limited his ability to work (Tr. 509). Plaintiff stopped working for reasons unrelated to a social or mental condition (Tr. 206). He did not seek any formal mental health treatment during the relevant period. Plaintiff reported that he spends time with his family and friends, regularly goes shopping, goes out alone, and has no difficulty with authority figures (Tr. 23, 228-29). He also attended school to become a CNC Program Operator during his alleged period of disability (Tr. 42, 46, 348).3
>
> In addition to these activities, Plaintiff's treating physicians did not document any social abnormalities or limitations, and instead characterized him as pleasant and cooperative (Tr. 260, 263, 265, 268, 273, 281, 468, 526, 538). Significantly, Plaintiff denied psychological symptoms to his treating sources at 16 medical appointments throughout the relevant period and no social or psychological abnormalities were documented, including appointments on February 29, 2012 (Tr. 318), March 1, 2012 (Tr. 303), March 16, 2012 (Tr. 373, 376), April 2, 2012 (Tr. 307-08), April 6, 2012 (Tr. 369, 372), May 11, 2012 (Tr. 367-68), May 24, 2012 (Tr. 361-62), May 31, 2012 (Tr. 578), June 26, 2012 (Tr. 619), July 17, 2012 (Tr. 574), December 21, 2012 (Tr. 614), April 30, 2013 (Tr. 558), May 23, 2013 (Tr. 606), July 7, 2013 (Tr. 538), July 10, 2013 (Tr. 596-97, 599), and August 14, 2013 (Tr. 592, 595). At Plaintiff's August 14, 2013 appointment, his treating physician noted that Plaintiff had intact judgment, intact recent and remote memory, appropriate affect, and "[n]o depression, anxiety, agitation, or psychosis" (Tr. 29, 595).

(Def. Brief at 7-8). Defendant accurately characterizes the record, and Plaintiff does not reply to this argument. (Pl. Reply). The two medical opinions indicating that Plaintiff did not need social limitations and the evidence cited by Defendant provide substantial evidence to the ALJ's RFC regarding social limitations.

Plaintiff cites a variety of cases from another District within the Third Circuit that remanded when the ALJ found that a claimant had mild social limitations but did not include additional social limitations in the RFC. (Pl. Brief). However, the Court may not deviate from the binding precedent in *Rutherford* based on District Court cases. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (internal citations omitted). Plaintiff's failure to cite any specific additional limitations renders this allegation of error a "generalized response [that] is not enough to require remand." *Rutherford*, 399 F.3d at 553. Pursuant to *Rutherford*, Plaintiff has failed to demonstrate that any error was harmful. *Id.* Plaintiff cannot demonstrate that no reasonable person would exclude additional social limitations based on this evidence, or that the Court would direct a verdict in Plaintiff's favor if the issue were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend remand on these grounds.

### 2.  Written Expression Limitations

Like social limitations, Plaintiff's counsel failed to question the VE regarding limitations in written expression. (Tr. 75-79). Consequently, Plaintiff waived his right to

challenge the ALJ based on an alleged omission in the RFC, because he fails to demonstrate "good cause" required to prevent incentivizing a "second bite at the apple." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). Regardless, Plaintiff fails to demonstrate that failing to include a limitation relating to limitation was harmful.

Dr. Aboud indicated that Plaintiff would need accommodations that "minimize[ed] the need for writing on the job and/or using computers with spell-check is necessary." (Tr. 699). Plaintiff indicated that he follows instructions well. (Tr. 230). Dr. Glover disagreed, opining that Plaintiff had no more than minimal mental health limitations in any area. (Tr. 87-88). The ALJ relied on Dr. Glover's opinion in creating the RFC. Dr. Glover's opinion provides the rationale for excluding Dr. Aboud's written expression limitation from the RFC. (Tr. 87-88). Plaintiff cites only Dr. Aboud's opinion. (Pl. Brief). Defendant responds that "Plaintiff did not allege disability due to a mental or cognitive condition (Tr. 206). He attended school during his alleged period of disability and did not relate any problems with the spelling, writing, or the cognitive portion of the workload (Tr. 42, 348). Plaintiff even testified that he liked to read (Tr. 29, 228). Plaintiff completed his disability forms (Tr. 224-31), helped his children with homework and used e-mail (Tr. 225), graduated high school with no special education (Tr. 30, 207), and earned IQ test scores that "demonstrate[d] [a]verage cognitive ability overall" (Tr. 690). (Def. Brief at 12-13). Defendant responds that the DOT description for surveillance system monitor does not include writing. (Def. Brief at 15). Defendant notes that VEs in

other cases have testified that there was no significant writing. (Def. Brief at 15). Plaintiff replies regarding VE testimony, but not the DOT description. (Pl. Reply). In Reply, Plaintiff again cites on Dr. Aboud's opinion, without acknowledging the contradictory opinion from Dr. Glover or the evidence cited by Defendant. (Pl. Reply). The ALJ's acknowledgment of Dr. Aboud's opinion and reliance on Dr. Glover's opinion provide sufficient explanation, and Plaintiff fails to demonstrate that no reasonable person would have resolved this conflict in favor of Dr. Glover, who opined that no additional limitations were necessary. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend remand on these grounds.

## VI.   Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires

"more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, it is HEREBY RECOMMENDED:

    I.    This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

    II.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: September 30, 2016                          s/Gerald B. Cohn
                                                          GERALD B. COHN
                                        UNITED STATES MAGISTRATE JUDGE